———

GENERAL ELECTRIC CO. v. PHILADELPHIA ELECTRIC & MFG. CO.

(District Court, E. D. Pennsylvania.   August 24, 1915.)

No. 701.

1. PATENTS ⬤⇒328—INFRINGEMENT—LAMP SOCKET.
    The Jones patent, No. 818,263, for a lamp socket for use in series electric lighting, *held* not infringed, in view of the prior art.

2. PATENTS ⬤⇒51—ANTICIPATION—PAPER PATENT.
    That no commercial use was made of a patented device does not affect the weight to be given the patent as an anticipation or limitation of a later patent, in so far as regards the inventive ideas it discloses.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 66–69, 72, 74; Dec. Dig. ⬤⇒51.]

In Equity. Suit by the General Electric Company against the Philadelphia Electric & Manufacturing Company. On final hearing on bill, answer, and proofs. Decree for defendant.

Samuel Owen Edmonds, of New York City, for plaintiff.
Howson & Howson, of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. The bill of complaint in this case charges infringement of patent rights and prays the usual relief afforded by a writ of injunction and an accounting for profits. The answer is as comprehensive as an answer could well be. It denies the truth, or requires proof, of all the averments of the bill, and challenges the proprietary right set up by denying the validity of the patent, averring anticipation, lack of invention, and the inclusion without disclaimer of more in the claim than the invention covers. The patented device in dispute embodies the claimed invention of Walter J. Jones, letters patent No. 818,263, issued to him April 17, 1906. Plaintiff now possesses the proprietary right by assignment. The embodied thought is a lamp socket for use in series incandescent lighting. At the trial all claims were reduced to that of claim 1, and the defense to anticipation.

Light as a manifestation of electrical action in lighting systems is produced in one of two ways. Starting with the conception of electricity in the form of a stream, and the manifestations of its presence to be due to the flow, and the flow to pressure exerted at the head, we have presented two methods of distribution of electricity to the lamps arranged along the circuit. The pressure may be kept constant and the current left to vary according to the number of lamps in use, or the pressure may be varied so as to keep the current constant throughout the like changing conditions. This difference in the mode of distributing the current calls in each case for a difference in the method of connecting the lamps. The nomenclature of the art has supplied us with terms of designation for these arrangements, and gives us the words "series" and "multiple arc." We are here concerned only with the "series" arrangement.

It is a condition of this system that it is dependent upon the continuity of the current. The stream is conceived of as issuing from the dynamo, passing along through each lamp in its course, and returning by a completed circuit to its source. An interruption anywhere in the current, as by a break, stops the whole flow. Among the conditions thus presented are these: All the lamps in the circuit must be kept in use, whether needed or not, for if one is removed the circuit is broken. The same result follows the break of a filament in any one lamp. This result from the one cause is prevented by a device which closes the circuit at the socket when the lamp is removed, and from the other by making the dam which diverts the current through the lamp so weak that it breaks down when the current fails to flow through the lamp. By this means the continuity lost through the lamp is restored at the socket.

It is conceded that these features were old in the art at the date of the Jones patent. The one is known as an automatic line-closing contact, and the other as a film cut-out. This fact is at once seen to narrow any possible valid claim of invention to the compass of some special or subsidiary structure or combination of arrangements by which the principle of these before known devices could be applied. It further follows that, as there is no claim to either the discovery of any principle underlying these inventions, or to their first application

to electric lighting appliances, the prior use of such devices does not invalidate of itself the claim of novelty made on behalf of Jones in the structure claimed to be his invention. The devices which preceded the Jones patent operated upon like principles with his and were sufficiently practical to be in commercial use. They left, however, room for improvement and something to be desired.

One of these inventions was the product of the fecund brain of Prof. Elihu Thomson. Its shortcoming was that, for the protection of the repair men, the whole series of lamps was put out of commission while one was being restored to use. The replacing of a cut-out brought a like consequence. After its trial in commercial use it was discarded. The interregnum between the time of its disuse and the introduction of the Jones device was filled by devices which retained in the socket the line-closing contact, and transferred to the lamp, or to a base which was essentially part of the lamp, the film cut-out. The idea behind these prior art constructions was (with one possible exception) to have two structures (a socket and a lamp) incorporating with the one, or in the two, line-closing and cut-out devices. Trial was given to each of these methods of securing automatic operation of line-closing and cut-out functions as either was needful.

To the mind untrained to precision of expression in the use of the technical language of any art or science, the clearest conception which can be had of the Jones idea is to view it from the standpoint of the shortcomings of the prior art, and the results of the investigations of those who had preceded him in this field of invention, and to discover to what extent he called upon the resources of the prior art and availed himself of the labors of others. These shortcomings and the previous efforts to make them up have already been indicated. The Jones idea involved an acceptance of the old recognition of the necessity for a line-closing contact and a cut-out, and an adoption of the devices by which this necessity was met. It involved, also, the discard of the thought of incorporating either of these devices with the lamp proper. Thus far nothing new is claimed for him. The prior art, however, had accepted as a condition of the problem (with the possible exception noted) that these devices must be part of the socket, or the one be part of the socket and the other be part of the lamp; the whole construction being limited to these two parts. The Jones idea was to divide these two structures into three, or to introduce a third structure. This is the essential new feature of his device, because the second feature of having the added structure contain the cut-out grew out of it by the elimination of the thought of placing it elsewhere.

A recapitulation in the form of a statement of the evolution of the idea makes this clear. The necessity for line-closing contacts and cut-outs had been early recognized and was accepted by Jones. The idea which incorporated both devices with the socket was not accepted, because all known constructions based on this idea had been pronounced failures by the trade. The device which separated them by incorporating the cut-out with the lamp was not a satisfying success, and this idea of incorporating one of the devices with the lamp was repudiated by him. That part of the idea behind the first attempts,

which incorporated one of the devices with the socket, he adopted and retained. As the lamp proper was to contain neither device, and as the part thus far called the socket was to contain one device only, the consequence followed that the added structure must contain the other device. The real controversy is therefore narrowed to the fact of whether this idea of a third structure originated with Jones.

It is important that the discussion be not permitted to descend into one over mere verbiage. When the entire construction consisted of the two parts or structures, but two names were needed, and we had the terms "lamp" and "socket" to designate and distinguish them. When a third part or structure was added, another word was called for to name it. This need was supplied by Jones by the adoption of the word "receptacle." As what had been called "lamp" remained unaltered in structure and function, and as the word applied to it was appropriately descriptive, there was no call for a change in its name. The science of mechanics has furnished us with the terms "he" and "she," or "male" and "female," to apply to different parts of mechanical construction. In the instant case it is a matter of indifference, after we have designated one of three structures as "lamp," which of the remaining two we call "receptacle" and which "socket." In putting the three together, the middle part is in a sense a socket with respect to the lamp, and the part attached to the wires is a socket with respect to the others when made one by attachment, or the other two when together form a socket for the lamp. Adhering to the figure of speech employed in mechanics, the middle structure is hermaphroditic. To the middle structure, or (as Jones seems to have done) to the structure furthest away from the lamp, may with equal appropriateness be given the name "receptacle" and the names of "lamp" and "socket," retained for the other parts of the construction, respectively. We are concerned not with any mere terminology, but with the things themselves.

This brings us to the consideration of the claim and of the defense. The claim in substance is to the invention involved in the thought of an improvement to the old construction, by making of it a combination of three structures, instead of two, or, eliminating the lamp, two structures, instead of one—a "receptacle" and a "socket," in place of a "socket" only. In addition to this division of structure, the receptacle is to be made to carry an automatic line-closing contact and the socket to possess a film cut-out. The cut-out carried by the socket consists of co-operating contacts, which, before the cut-out is called upon to perform its function, are separated by some substance of slight non-conducting value. No invention is claimed in either the means by which the line-closing is effected or the cut-out operates, nor in the application of either or both in combination to series incandescent lighting. Merit is ascribed, however, to the feature of finding such a construction that in the operation of the line-closing contacts the new line of current flow is established not later than the rupture of the old.

Claim 1 of the patent application covers the patentee's embodiment of the inventive features described and does not cover more. The

answer made is that the defendant's device is no infringement of that of plaintiff, because that of defendant overlaps that of plaintiff only in those features in which the prior art had anticipated both. There is no need to weigh the argument made on behalf of defendant, so far as it is aimed to produce the conviction that the prior art discloses the use of these line-closing contacts and cut-outs in connection with the adjustment of lamps in series incandescent lighting systems, because plaintiff admits the conclusion sought to be established. There is a well-known authority for the doctrine that an admission dispenses with proof of the fact admitted, and the principle may apply as well to an argument. The admission may fairly be construed as covering all combinations in constructions in which the dual structure is a feature.

This limits the discussion to the consideration of the disclosures in the Wirt patent, No. 465,508, and the triple structure features of the patent in suit, because, if the plaintiff's patent was forestalled in this feature, we understand plaintiff not to deny the propriety of a decree dismissing its bill. No more apt words can be chosen to present the similitude or absence of it between these two claimed inventions than to paraphrase the language which each patentee has employed in his application. Wirt gives expression to the thought in his mind by first describing the cut-out and then providing, as is the meaning of the description in the application, that this cut-out may be made part of the lamp base, or may be contained in a separate structure such as Jones has called the socket. As what Wirt termed the socket (to which Jones has applied the name of receptacle) supplied with the line-closing contacts, was well known to the art, Wirt described his invention to be a double socket, or socket within a socket, or what he calls a socket and an independent piece, and what Jones calls a receptacle and socket, the latter of which was to carry the cut-out. Wirt, it is true, primarily had in mind that this should be permanently a part of the lamp, and such form of construction was in his thought the preferential form; but this does not change the fact that he described fully and accurately a united construction, which combined, in severable union, the triune parts which, in the terminology employed by Jones, consisted of a receptacle, a socket, and a lamp containing line-closing contacts and cut-out, the former of which was to be carried by the receptacle, the latter by the socket, and neither by the lamp part of the construction as a whole.

[2] With respect to these features of the Jones patent which we are now discussing, embracing the trinity of severable parts and the parts in which were to be performed the line-closing and cut-out functions, can this description of the Wirt invention be truly said to differ from that given by Jones of his invention? If Wirt described what Jones claims to have invented, and the latter had the description before him, how can he successfully assert originality of thought? We cannot follow the argument of counsel to the conclusion reached by him that the fact that no commercial use was made of the Wirt idea warranted Jones in first appropriating it and then asserting exclusive proprietary rights in it on the basis of original discovery. Nor do the cases cited support the argument. If commercial, not inventive, novelty were the

test of the validity of a patent, the argument would be convincing. If Wirt had merely conceived the idea without patenting his invention, or describing it in any printed publication, or introducing it into commercial use, or embodying it in tangible form, and had abandoned the thought as valueless, and Jones had conceived of the same thought without aid from Wirt, cases cited by plaintiff would have application.

The exclusive rights conferred by the patent laws are given to promote the progress of science and the useful arts, and the price exacted is priority of discovery or invention. The prima facie proof of precedence afforded by the grant of letters is not, however, overborne by proof of vagabond thoughts, or of ideas never reduced to practice, which may have entered the minds of others, and an infringer cannot avail himself of such proofs as a defense. The existence of letters patent issued for the same invention, or proof of its description in printed publications, is a defense, whether the grantee of the invalid letters was aided by knowledge of the prior invention or not. The finding which we make that the feature of having receptacle, socket, and lamp severably united in the completed structure with the line-closing contacts in the receptacle and co-operating contacts normally separated by insulation of low dielectric value in the socket was the invention of Wirt relieves us of the duty of further discussion of the merits of the bill, because there is virtually the admission that, if these features are not novel, there is no infringement of the plaintiff's patent.

The very forceful argument advanced on behalf of the plaintiff does, however, merit one further comment, to indicate its logical limits and the extent to which it lacks convincing power. The record, supplemented by the admissions of defendant, discloses the proprietary right of the plaintiff to the inventive idea embodied in the Jones device. This right is abundantly sustained by the argument of counsel. Title, however, must be traced through the invention of Wirt, and not through the claim of Jones. The time limit of the exclusive right conferred by the act of Congress cannot be extended by submerging the one and asserting the other. The conviction cannot be escaped that, had the defendant's device appeared during the life of the Wirt patent (which by the admission of defendant was owned by plaintiff), infringement would have been successfully charged. To permit, through the reincarnation of the Wirt invention in the Jones claim, a renewed life to be given to the right conferred by Congress, would be to introduce a new principle into the law of patents. There would be no justification for a finding of identity in the Wirt and Jones structures, nor is there need for the defense to assert this. They were both upon the same quest of improving the devices in commercial use in those respects wherein they were short in performance. One, however, had his attention directed to adopting his invention for use with the T.-H. appliances and the other to the Edison practices. In the interval of time between Wirt and Jones, electrical science and practice had progressed far in the direction of the substitution in electrical constructions of nonconducting for material of high conductivity and of im-

provements in insulating methods. These facts and other modifications of the problem led to differences in structural results. The inventive idea was none the less the same.

Assume the prior art to have presented the thought of a lamp, and also a socket (or independent piece) carrying a film cut-out and adapted to receive the insertion of the lamp and another socket (or receptacle) containing line-closing contacts and designed to receive the first-mentioned socket, so that receptacle, socket, and lamp in combination would form a lamp for use in series incandescent lighting, and we have before us the basis for these findings. One is that we have a mental picture which is precisely the same as that presented by the language in claim 1 of the Jones patent. Another is that we have described what Wirt described in his application. The third is that in producing a completed lamp, such as described, no call is made for more than skill in the fabricator, or, if the inventive faculty is called into exercise at all, it would necessarily only be in some details of construction. The bearing point of the whole argument is right here. Aside from any undescribed details of construction, the inventive value of the Jones device was in this: That he followed the admitted prior art in retaining the line-closing contacts in what he terms the receptacle; he further followed the art in removing the film cut-out from the receptacle; he repudiated the old idea of transferring the cut-out to either the lamp or to a fixed base attached to the lamp, and placed it in an independent structure which he calls a socket, into which the lamp could be inserted, and which in turn could be inserted in the receptacle. If he was anticipated in this latter idea, how can he be said to have originated it?

As before indicated, there is no logical value in the fact that the plaintiff did not put the Wirt invention to commercial use, except to prove commercial novelty in the Jones device, and commercial novelty does not necessarily imply inventive novelty. Neither can invention be ascribed to Jones by proving that the plaintiff made no commercial use of the Wirt invention, nor that its managers believed it would prove a failure, nor by the fact that the device was improved by insulation, or that it required an "adapter" to adjust it to different systems in commercial use. If such proofs of inutility in the Wirt device destroyed its claim to inventive merit, the like test would deny patentability to the Jones device. Moreover, all this is aside from the point at issue. The validity of the patent is not assailed because of lack of utility, but on the ground of the absence of inventive novelty in those features which it has in common with the device of defendant. If these features originated with Wirt (as we have found), they were not the invention of Jones. An admitted failure, it is true, does not invalidate a subsequent proven success; but even an admitted failure may disclose inventive ideas. A man may take a device, which has been a failure, and invent an improvement, which may make of it an instant success. The second inventor is entitled to protection in so far as he has invented; but his improvement does not sustain a claim that he has invented those features which did not originate with him, nor can he exclude a third inventor from devising improvements

by which the same failure may be transformed into another success, provided the last improver borrows nothing from the original ideas of his predecessor. These untenable claims are put forth on behalf of the Jones patent.

The bill should accordingly be dismissed, and a decree effectuating this may be submitted.